CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 24 2005

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| SYLVIA H. MOORE,<br>Plaintiff, | )<br>)<br>) |
| v. | ) Civil Action No. 4:04-CV-00046<br>) |
| JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br>Defendant. | ) By: Michael F. Urbanski<br>) United States Magistrate Judge<br>)<br>) |

## REPORT AND RECOMMENDATION

Plaintiff Sylvia H. Moore brought this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner of Social Security denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. The case was referred to the undersigned magistrate judge on October 15, 2004 for report and recommendation. Having reviewed the record and after briefing and oral argument, it is recommended that the Commissioner's motion for summary judgment be granted as there is substantial evidence to support his decision.

## STANDARD OF REVIEW

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

## FACTUAL AND ADMINISTRATIVE HISTORY

A review of the administrative record establishes the following. Plaintiff's DIB insured status expired on December 31, 2000. (R. 51) On February 27, 2002, plaintiff applied for DIB alleging that she became disabled on August 15, 2000, due to a knee condition. (Transcript, hereafter "R.", at 48-50, 60) The Virginia Disability Determination Service denied her claim initially and upon reconsideration. (R. at 20-26) At plaintiff's request, an administrative law judge ("ALJ") held a hearing and determined that the denial of plaintiff's claim for DIB was appropriate as she could perform her past relevant work. (R. 7-15) The ALJ's decision became final when the Appeals Council denied plaintiff's request for review on April 24, 2004. (R. 3-5) Plaintiff then filed this claim objecting to the Commissioner's final decision.

The crucial question in this case is whether plaintiff was disabled for all forms of substantial gainful employment as of December 31, 2000. See 42 U.S.C. § 423(d)(2). There are four elements of proof which must be considered in making such an analysis: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

Plaintiff injured her knee in a fall on August 15, 2000. On October 20, 2000, two months after her fall, plaintiff sought treatment from W.D. Prince, III, M.D., her family physician. (R. 117) Dr. Prince noted that although plaintiff had some swelling in her right knee, she had normal motion. Id. Dr. Prince diagnosed plaintiff with osteoarthritis and prescribed Naprosyn, an anti-inflammatory drug. Id.

2

On November 14, 2000, plaintiff began treatment with Michael G. Wenkstern, M.D., an orthopedic surgeon. Id. at 147. The examination showed that despite pain and swelling, plaintiff continued to have stable knee ligaments. Id. Dr. Wenkstern diagnosed right knee strain, superimposed on osteoarthritis with significant patella-femoral pain. Id. at 147. Dr. Wenkstern advised plaintiff about exercises, limited activities, and prescribed Naprosyn. Plaintiff saw Dr. Wenkstern again a month later on December 19, 2000. Following the examination, Dr. Wenkstern drained plaintiff's right knee and injected it with Cortisone. Id. at 146. At that visit, Dr. Wenkstern noted that "[s]he will limit her activities, use a cane as needed. Return in 4 weeks if unimproved. We might consider an arthroscopic examination." (R. 146)

Because plaintiff's insured status expired as of December 31, 2000, she must establish that she was disabled based on her condition as of that date. As of December 31, 200, no doctor had opined that plaintiff was disabled nor does the scant record of medical treatment support a contention that she could not engage in any substantial gainful activity.

Plaintiff continued to see Dr. Wenkstern in early 2001. On January 18, 2001, Dr. Wenkstern prescribed Nalfon, a different anti-inflammatory drug for her persistent pain. Id. at 145.

On February 27, 2001, however, plaintiff reported to Dr. Wenkstern that "she is much improved." Id. at 144. Dr. Wenkstern noted that plaintiff walked "much better," displayed "no mechanical symptoms," had "no limp," and had a full range of motion in her right knee. Id. at 144. At that time, Dr. Wenkstern told plaintiff that she could take Nalfon and return to see him as needed. Id.

On April 18, 2001, plaintiff again visited Dr. Prince for her regular six-month check-up. Id. at 107. Dr. Prince reported that plaintiff was doing well and enjoying a good year healthwise.

3

Id. Although plaintiff complained of knee pain at night, Dr. Prince found that plaintiff had normal muscle tone and did not have joint swelling, muscle cramps, or muscle weakness. Id. at 107, 109. Dr. Prince diagnosed plaintiff with arthritis and prescribed Zostrix, a topical cream. Id. at 110. There are no medical records of any visits to health care providers or treatment for plaintiff's knee during the next six months.

Plaintiff appears to have re-injured her knee at some point in October, 2001. On October 23, 2001, Dr. Wenkstern reevaluated plaintiff following the several month break in treatment. Id. at 143. Plaintiff indicated that she had twisted her knee two weeks before. Id. Despite the new injury, plaintiff stated that she "rarely" used her cane. Id. When Dr. Wenkstern evaluated plaintiff, she had pain and swelling. Id. Dr. Wenkstern treated the symptoms by draining plaintiff's knee and injecting Cortisone. Id.

Dr. Wenkstern performed arthroscopic knee surgery on plaintiff on December 26, 2001 because plaintiff's discomfort persisted. Id. at 89, 142. On February 1, 2002, Dr. Wenkstern determined that plaintiff could work so long as she did not engage in manual labor. Id. at 140. By August 5, 2002, plaintiff's knee responded to Ibuprofen and Tylenol and she was "much improved" with no mechanical symptoms. Id. at 137. Dr. Wenkstern did not change his view that plaintiff could perform all but manual work until February 18, 2003, at which time he stated that plaintiff's knee prevented her from all work. Id. at 135.

Frank M. Johnson, M.D., reviewed the medical evidence on September 5, 2002 to consider plaintiff's eligibility for DIB benefits between her alleged onset of August 15, 2000 and December 31, 2000. (R. 126-34) Dr. Johnson found that plaintiff's allegations were credible and that she would have difficulty standing for prolonged periods of time. Id. at 134. Despite this, Dr. Johnson found that plaintiff possessed the ability to stand for six hours of an eight-hour

4

workday. Id. at 127. Dr. Johnson concluded that plaintiff could handle the demands of medium work. Id. at 134.

## ANALYSIS

The Social Security Act places the burden of proof on the individual who is seeking benefits, stating that "[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require." 42 U.S.C. § 423(d)(5)(A). The Social Security regulations also place the burden of proving disability on the claimant. 20 C.F.R. § 404.1512(a). See Reichenbach v. Heckler, 808 F.2d 309, 311 (4th Cir. 1985). Similarly, plaintiff has the burden of proving that she became disabled before the date at which her insured status for purposes of entitlement to DIB expired. 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. § 404.131(a).

The medical evidence in this case does not demonstrate that plaintiff has met her burden of showing that she was disabled prior to the expiration of her DIB status. Despite claiming that she injured her knee in August 2000, plaintiff did not seek medical attention until two months later, and did not see an orthopedist for a month after that. (R. 117, 147) In early 2002, Dr. Wenkstern stated that plaintiff could not do manual labor, (R. 140, 136, 139), a view which persisted a until February 18, 2003. At that time, more than two full years after plaintiff's DIB insured status had expired, Dr. Wenkstern issued a more restrictive opinion, stating that "[t]he condition of her knee prevents her from engaging in any gainful employment, and she is not likely to improve significantly with treatment. It is likely that eventually she will need a knee replacement for relief of pain." (R. 135) Regardless of Dr. Wenkstern's opinion at that time, the issue in this case is whether plaintiff met her burden of proving disability as of the end of 2000. Substantial evidence supports the Commissioner's decision that she did not.

5

Review of plaintiff's treatment records undercuts plaintiff's argument that Dr. Wenkstern has consistently opined that plaintiff has been unable to work and that the ALJ ignored his opinion. See (Pl. Mem. Supp. M. Summ. J. at 5-6.) While "the opinion of a claimant's treating physician must be given great weight," Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987), such an opinion may be disregarded if there is persuasive contradictory evidence. Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir. 1986). During the plaintiff's DIB-insured period, plaintiff was seen twice by Dr. Wenkstern. On November 14, 2000, Dr. Wenkstern observed a "slight limp on the right" and diagnosed right knee strain. An x-ray taken at that time suggested osteoarthritis. Dr. Wenkstern advised plaintiff about some exercises and continued her on Naprosyn. A month later, on December 19, 2000, plaintiff complained again of pain, stiffness and recurrent swelling her right knee, and Dr. Wenkstern gave her a cortisone injection. Plaintiff was seen by Dr. Wenkstern in January and February, 2001 and reported improvement. Several months passed without any treatment, but plaintiff returned to see Dr. Wenkstern in late October, 2001, after twisting her knee earlier that month. (R. 143) The fact of plaintiff's improvement, her lack of treatment for a significant period, and her subsequent fall provide ample evidence for the ALJ's decision that no disability was proven as of December 31, 2000. While plaintiff had arthroscopic surgery in December, 2001, the worsening of a condition or the development of a new impairment after the expiration of a claimant's disability insured status cannot be the basis for a remand or an award of benefits. Harrah v. Richardson, 446 F.2d 1, 2 (4th Cir. 1971).

Additionally, other materials included in the administrative record support the conclusion that DIB benefits must be denied and that the ALJ acted properly in discounting her subjective complaints of a disabling condition. (R. at 13) In a signed statement dated sixteen months after plaintiff's DIB-insured status expired, plaintiff stated that she performed five activities which

6

require a high level of mental or physical functioning. (R. 69-75) First, plaintiff stated that she walked to her mother's house five days a week to sit and talk. Id. at 69, 72. Second, plaintiff stated that she attended Bible class or meetings for her church choir. Id. at 73. Third, plaintiff stated that she prepared dinner, ironed clothes, and washed laundry. Id. at 70. Fourth, plaintiff stated that every day she spent one hour reading the Bible, Sunday school lessons, religious novels, or the newspaper, and that she spent three to four hours daily watching television. Id. at 71-72. Plaintiff indicated that she had no difficulty understanding or remembering what she read and watched. Id. at 72. Fifth, plaintiff said that she drove her car short distances. Id. Plaintiff's testimony at the hearing before the ALJ mirrored her written statements. Id. at 154, 159.

Given the deferential standard of review provided under 42 U.S.C. § 405(g), the court must affirm the decision of the ALJ as there is substantial evidence to support the conclusion that plaintiff was not disabled as defined under the Social Security Act as of December 31, 2000. See Pierce v. Underwood, 407 U.S. 552, 565 (1988); King v. Califano, 559 F.2d 597, 599 (4th Cir. 1979). As such, it is the recommendation of the undersigned that defendant's motion for summary judgment be granted.

## CONCLUSION

The Clerk of the Court is directed immediately to transmit the record in this case to the Honorable Samuel G. Wilson, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to filed specific objections pursuant to 28

7

U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court is hereby directed to send a certified copy of this Report and Recommendation to plaintiff and counsel of record.

**ENTER:** This 24th day of March, 2005.

Michael F. Urbanski
United States Magistrate Judge